IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 SEP 14  PM 5: 10

DEPUTY CLERK_____

| | | |
|---|---|---|
| SHEON ANTHONY POLK, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-0022 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY RESPONDENT'S MOTION TO DISMISS AS TIME-BARRED
AS TO POTTER COUNTY CAUSE NOS. 52,536 AND 52,537
AND TO DISMISS FEDERAL HABEAS PETITION AS TO
POTTER COUNTY CAUSE NOS. 52,538 AND 53,105 AS TIME-BARRED**

Came for consideration the Petition for a Writ of Habeas Corpus filed by petitioner SHEON

ANTHONY POLK.  For the reasons set forth below, it is the opinion of the undersigned United

States Magistrate Judge that petitioner's federal habeas application challenging Potter County Cause

Nos. 52,536 and 52,537 is not time-barred by the one-year statute of limitations in 28 U.S.C. §

2244(d) and that respondent's Motion to Dismiss as Time-Barred should be DENIED.[1]  It is also the

opinion of the undersigned that petitioner's habeas application, to the extent it challenges Potter

---

[1]The undersigned previously issued a Report and Recommendation to grant respondent's motion to dismiss on October 22, 2012.  On November 9, 2012, the District Judge entered an Order adopting the Report and Recommendation and dismissing the habeas petition, together with a corresponding Judgment.  On September 17, 2013, the District Judge vacated the Order dismissing the habeas petition and set aside the Judgment resulting in the Report and Recommendation to grant the motion to dismiss remaining pending.  On this date, the undersigned has withdrawn the original Report and Recommendation.

County Cause Nos. 53,538 and 53,105, is time-barred and should be dismissed.

# I.
## PROCEDURAL HISTORY

On March 8, 2006, in the 47th Judicial District Court of Potter County, Texas, petitioner was indicted with a 2nd degree felony offense of possession of a controlled substance, a 3rd degree felony offense of possession of a controlled substance, and two (2) charges of 2nd degree felony offenses of possession of a controlled substance in a Drug Free Zone (DFZ). *State v. Polk*, Nos. 52,536, 52,537, 52,538, and 52,539. These offenses were alleged to have occurred on October 5, 2005 (both DFZ offenses), October 13, 2005 (2nd degree possession offense, #52,536), and November 7, 2005 (3rd degree possession offense, #52,537). Each indictment contained an enhancement paragraph alleging a prior felony conviction for aggravated assault with a deadly weapon from January 2002.

On April 24, 2006, the State prosecutor sent a plea offer letter to petitioner's attorney extending an offer of twenty (20) years confinement in each case in exchange for petitioner's guilty plea and judicial confession to each of the four (4) Potter County cause numbers. [Docket #16, at 14-15]. The offer further stated the "sentences may run concurrent with his <u>Randall County</u> case(s)."[2] (emphasis added). The offer stated it was contingent upon petitioner accepting it and entering pleas on or before May 8, 2006, and no further criminal history being found. The plea offer did not indicate the manner in which petitioner's Potter County sentences would be calculated, *i.e.*, concurrently or consecutively. However, the plea offer letter stated that if petitioner <u>did not</u> plead, the State would seek to have the sentences run consecutively. The letter expressly stated, "If the

---

[2]On October 4, 2005, petitioner had been charged by complaint in Randall County, Texas, with the first degree felony offense of possession with intent to deliver a controlled substance in a DFZ. *State v. Polk*, No. 17,478-C. Petitioner was re-indicted under Cause No. 18,268-C on August 9, 2006.

offer is not accepted by that time the offer is withdrawn and this matter will be set for trial. If these matters are tried there will be separate trials and the State will seek cumulative sentencing as to each charge."

On May 25, 2006, the State indicted petitioner for a 3rd degree felony offense of possession of a controlled substance in a drug free zone, enhanced, for the October 5, 2005 offense which had originally been indicted as a 2nd degree felony under Cause No. 52,539. *See State v. Polk*, No. 53,105. The State then dismissed Cause No. 52,539. The State did not at any time file a motion to cumulate sentences in any of the four (4) cases.

On June 21, 2006, petitioner and his counsel appeared in state district court for Potter County. Petitioner was provided Written Plea Admonishments in all causes. In Cause Nos. 52,536 and 52,537, the admonishments did <u>not</u> inform petitioner that the sentences assessed in these cases would "not run concurrently" with the sentences for his DFZ possession offenses. In Cause No. 52,538, the admonishments noted petitioner's minimum sentence was increased by five (5) years as a DFZ offense but made no mention of how the sentence in that case would run or be calculated with regard to petitioner's other sentences. Petitioner's admonishments in Cause No. 53,105, also a DFZ, enhanced offense, made no mention of how any of petitioner's sentences would be calculated.

Petitioner entered pleas of guilty to all of the charged offenses. The State's written punishment recommendation in each case was imprisonment for a term of fifteen (15) years (rather than the earlier plea offer of twenty (20) years) and a fine of $100 in each cause number.[3] In Cause No. 52,538, the punishment recommendation from the State included a specific recommendation

---

[3]At an evidentiary hearing in this court, petitioner advised the offer was reduced from 20 years per case to 15 years per case prior to the guilty plea hearing.

that an "affirmative finding of drug free zone" be made but made no mention of consecutive sentences. The state trial court accepted petitioner's guilty pleas and adjudicated petitioner guilty of the charged offenses. The trial court's docket sheets in each case reflect a June 21, 2006 entry indicating the trial court ordered punishment assessed at "15 years TDC." These docket entries made no reference to any sentence running consecutively or cumulatively to any other sentence. No transcription of the guilty plea and sentencing hearing is available.[4]

One day later, on June 22, 2006, the trial court signed the Judgments in each case. In each of the two (2) Judgments entered for the two (2) possession of a controlled substance in a DFZ offenses, the state trial court assessed petitioner's punishment at fifteen (15) years imprisonment in the Texas Department of Criminal Justice, Institutional Division (TDCJ-CID) and a $100 fine, said sentences to run concurrently with each other and to be credited for time served. *State v. Polk*, Cause Nos. 52,538 and 53,105. In each of the two (2) Judgments entered for the other two (2) possession of a controlled substance offenses (not in a DFZ), the state trial court again assessed petitioner's punishment at fifteen (15) years imprisonment in TDCJ-CID and a $100 fine. The judgments in both of those cases, however, included the following language:

> And the said defendant on the 21st day of June, 2006 having been legally convicted of and sentenced for the offense of Possession of a Controlled Substance in a Drug Free Zone, Enhanced, Third Degree felony enhanced pursuant to Sec. 12.42[a][3], Penal Code, in Cause No. 52,538-A in the 47th Judicial District Court of Potter County, Texas and his punishment having been assessed and adjudicated at imprisonment in the Texas Department of Criminal Justice, Institutional Division for fifteen (15) years, it is further ORDERED AND ADJUDGED that the punishment herein adjudged against the defendant shall begin when the judgment and sentence in said Cause No. 52, 538-A shall have ceased to operate.

---

[4] According to respondent, a court reporter was present at the sentencing hearing but attempts by respondent to obtain a copy of a transcript were unsuccessful. No evidence of what transpired at the sentencing hearing, in the form of a transcription, oral recording, or affidavit has been made available to this Court and no such document has been found in the state court records.

By the inclusion of the above-recited language, both Judgments provided that the 15-year sentences in those cases were to begin only when the 15-year sentence in Cause No. 52,538 was "completed." *State v. Polk*, Cause Nos. 52,536 and 52,537. The trial court's docket sheets in each of those cases (No. 52,536 and 52,537) reflect only that Judgment was signed on June 22, 2006, and do not indicate any further specifics with regard to the sentences. Fingerprint pages attached to the Judgments reflect petitioner's fingerprint and signature. Those fingerprint pages, however, were dated June 21, 2006, the day before the Judgments were signed by the trial court.

On June 21, 2006, the trial court certified that petitioner's cases were plea-bargained cases and that petitioner had no right of appeal. On July 14, 2006, however, petitioner filed a notice of appeal for each conviction and sentence. In the notices of appeal, petitioner argued his guilty pleas were involuntary due to coercion by, or ineffective assistance of, counsel. Specifically, petitioner argued counsel warned him on June 20, 2006 that if he chose to go to trial on his cases before the sitting trial court judge, the judge would "hammer" him and would "stack [his] sentences." Petitioner maintained he was "scared and coerced to take the plea of 15 years." In those notices, petitioner did not mention or complain about the Judgments in Cause Nos. 52,536 and 52,537 directing his sentences to run consecutive to his sentence in Cause No. 52,538.

On August 8, 2006, TDCJ-CID received possession of petitioner. From the date of his arrival at TDCJ-CID, all four (4) of petitioner's 15-year sentences were calculated as concurrent sentences and were not calculated as consecutive. TDCJ records reflected all of petitioner's Potter County sentences begin dates to be in early November 2005.

On October 17, 2006, the Court of Appeals for the Seventh District of Texas dismissed petitioner's appeals pursuant to Rule 25.2(d) of the Texas Rule of Appellate Procedure (which

requires an appeal be dismissed if a certification showing the defendant has a right to appeal has not been made part of the record). *Polk v. State*, No. 07-06-0272-CR.

On September 22, 2009, petitioner was convicted in Randall County, Texas, pursuant to a guilty plea, of possession of a controlled substance with intent to deliver in a DFZ and was assessed a 20-year sentence. Petitioner's 20-year sentence was to run concurrently with his 15-year sentences assessed in Potter County, and TDCJ records reflect a sentence begin date of November 14, 2005. After the Randall County conviction, all of petitioner's sentences, both Potter County and Randall County, continued to be calculated by TDCJ as concurrent sentences.

On April 21, 2010, petitioner was apparently nearing his parole eligibility date and he completed a form on a parole attorney's website and retained counsel to assist petitioner in his parole process. At some point thereafter, petitioner received correspondence from the attorney identifying, *inter alia*, petitioner's offense history, parole eligibility, projected release date and maximum sentence discharge date. Such correspondence reflected petitioner's 15-year Potter and 20-year Randall County sentences were running concurrently, that petitioner was eligible for parole on November 4, 2010, and that his maximum sentence discharge date was November 14, 2025.

In May 2010, the Texas Board of Pardons and Paroles issued notices to trial officials of the pending consideration of petitioner's release to parole. On August 10, 2010, petitioner's parole attorney requested an interview with "the voter" of petitioner's case before a parole decision was made.

After August 16, 2010 but before September 16, 2010, TDCJ-CID adjusted petitioner's sentences in Cause Nos. 52,536 and 52,537 to reflect they were to run consecutively to Cause No.

52,538.[5]  On November 14, 2010, petitioner received correspondence from his parole attorney advising petitioner that the attorney had confirmed that some of his 15-year sentences were now running consecutively and that he would not be able to assist petitioner in obtaining parole. Petitioner avers he did not learn of the cumulation of his sentences until November 14, 2010 when he received the correspondence from his attorney advising him the sentences were now running consecutively.

On December 30, 2010, petitioner drafted a "Motion for Nunc Pro Tunc Judgment" arguing the judgments in Cause Nos. 52,536 and 52,537 "were erroneously ordered to run consecutively" and requesting the trial court "order the reform of the judgments by deleting the cumulation order and allow all sentences be served concurrently."  Petitioner identified Cause Nos. 52,536, 52,537 and 52,538 in the caption of his motion, and indicated copies of the motion with attachments (21 pages in all) were sent to the court, the clerk and the district attorney's office.  Petitioner also drafted a letter to the state trial court judge setting out his contentions and citing authority why his sentences could not be cumulative and requesting the Judgments be reformed.  In Cause No. 52,536, the online criminal docket information reflects a January 10, 2011 entry of "file letter to judge from defendant w/ attachments," but does not otherwise indicate the nunc pro tunc motion was filed in any of the three (3) cases identified in the motion caption.  The record does not indicate any response to this motion was filed by the State or any action regarding the motion or correspondence was taken by the state trial court.

On April 29, 2011, petitioner drafted a second "Motion for Nunc Pro Tunc Judgment"

---

[5]A time sheet in the record dated August 16, 2010 reflected petitioner's sentences were running concurrently.  A time sheet in the record dated September 16, 2010, however, reflected petitioner's sentence of record as 30 years indicating consecutive 15-year sentences) with a maximum expiration date of November 4, 2035.

similar and nearly identical to his first motion.  He again argued the judgments in Cause No. 52,536

and 52,537 were "erroneously ordered to run consecutively" and requested the trial court "order the

reform of the judgments by deleting the cumulation order and allow all sentences be served

concurrently."  Petitioner also drafted an explanatory letter setting forth arguments why his

sentences had been "illegally cumulated" and requesting the judgments be reformed by deleting the

cumulation order.  This second motion also identified Cause Nos. 52,536, 52,537 and 52,538 in the

caption of the motion, and indicated copies of the 21-page motion/attachments were sent to the

court, the clerk and the district attorney's office.  In Cause No. 52,536, the online criminal docket

information reflects May 4, 2011 entries of "file letter to clerk from defendant," "file letter to judge

from defendant," and "file motion: for nunc pro tunc judgment pro se."

On August 5, 2011, the State drafted an answer in Cause Nos. 52,536 and 52,537 opposing

petitioner's motion for nunc pro tunc [the State did not specify which motion for nunc pro tunc – the

December 2010 motion or the April 2011 motion].  In its answer, the State noted petitioner entered

pleas of guilty on June 21, 2006, and even though a transcription of the sentencing hearing had not

been made, stated that "[a]t the time [petitioner] was sentenced, the Court ordered that the sentences

in Cause Nos. 52,536-A and 52,537-A run cumulatively to the sentence in Cause No. 52,538-A."

The State, citing Texas case law, noted "[a] judgment nunc pro tunc is appropriate to correct clerical

errors when the court's records do not mirror the judgment actually rendered," and that "[a] nunc

pro tunc order is not appropriate to correct judicial errors or omissions."  The State argued the

judgments in Cause Nos. 52,536 and 52,537 "correctly recited the Court's order that the sentences

in these cases run consecutively to the sentence in Cause No. 52,538-A" and that petitioner had

"failed to show that the Judgments in Cause Nos. 52,536-A and 52,537-A did not mirror the

sentence actually rendered by the Court."  The State further stated:

> Since the [petitioner] is claiming that the Court made a judicial error in ordering the Judgments in Cause Nos. 52,536-A and 52,537-A to run consecutively with the Judgment in Cause No. 52,538-A, the [petitioner] must raise this contention pursuant to an Application For Writ of Habeas Corpus under Art. 11.07, Texas Code of Criminal Procedure.

No sentencing transcript was cited by the State in its answer to petitioner's motion, and it does not appear one was produced.

On August 16, 2011, the state trial court, presided over by a different state district judge, entered an "Order Denying Motion for Judgment Nunc Pro Tunc" finding petitioner had failed to show that the judgments in Cause Nos. 52,536 and 52,537 "contain clerical errors which are subject to correction pursuant to judgments nunc pro tunc."  The state district court further found petitioner was "claiming that the Judgments in Cause Nos. 52,536-A and 52,537-A contain judicial errors which must be addressed in an application for writ of habeas corpus pursuant to Art. 11.07, Texas Code of Criminal Procedure."  No sentencing transcript was cited by the state trial court in its order denying petitioner's motion, and it does not appear one was produced.

On August 18, 2011, the Potter County District Clerk file-stamped and filed the State's answer to petitioner's nunc pro tunc in Cause No. 52,536, and the trial court's order denying the nunc pro tunc motion in all three (3) cause numbers reflected in the motions caption.

On August 22, 2011, the District Clerk's office file stamped the December 30, 2010 nunc pro tunc motion and accompanying correspondence, the April 29, 2011 nunc pro tunc motion and accompanying correspondence, as well as an additional undated letter from petitioner to the state trial court judge wherein petitioner argued his sentences could not be ordered to run consecutively under state law and were in violation of the State's plea bargain agreement.  [Docket Entry 81-1, at

6-8, 26, 28-30, 48, 57-59, 60-62, 63-64].  The online docket information reflects an August 22, 2011

entry in Cause No. 52,536 of "file letter to judge from defendant w/ attachments."[6]

On October 12, 2011, petitioner filed identical state applications for writs of habeas corpus

in all four (4) Potter County cause numbers challenging the stacking of the 15-year sentences

assessed in Cause Nos. 52,536 and 52,537 (the possession of a controlled substance convictions) on

the 15-year sentence assessed in Cause No. 52,538 (one of the possession of a controlled substance

in a DFZ convictions).  *Ex parte Polk*, Cause Nos. 76,790-01, -02, -03 and -04.  Petitioner alleged a

breach of the plea agreement, ineffective assistance of counsel, and abuse of discretion by the state

trial court judge in imposing an illegal sentence.  Petitioner requested either a new trial in each

cause, or that the habeas court "reform the Judgment and delete the cumulations order allowing

[sentences] to run concurrent as the negotiated plea agreement clearly states from the district

attorney."

On November 10, 2011, the State filed an answer denying the allegations in petitioner's state

habeas applications.  The State noted petitioner's grounds were "primarily based upon his

contention that his sentence in Cause No. 52,536-A was improperly ordered to run cumulatively

with his sentence in Cause No. 52,538-A."  The State argued exclusively that petitioner's sentences

in Cause Nos. 52,536 and 52,537 were "mandatorily cumulated with his drug free zone sentence in

Cause [No.] 52,538-A pursuant to section 481.134(h) [of the Texas Health and Safety Code] which

makes [it] mandatory that punishment for a crime committed under that section may not run

---

[6]The online docket information in Cause Nos. 52,537 and 52,538 do not reflect any entries concerning petitioner's nunc pro tunc motions or accompanying letters until the trial court's order denying the motion entered August 18, 2011.

concurrently with 'a conviction under any other criminal statute.'"[7]  The State maintained that since

petitioner's sentences in Cause Nos. 52,536 and 52,537 were not based upon section 481.134

governing drug-free zones, they fell into the category of "conviction[s] under any other criminal

statute."  The State did not argue any other basis to support the stacking of petitioner's sentences,

nor did it specifically address whether the plea bargain was violated or address the effectiveness of

trial counsel.  No affidavits from either counsel for the State or defense counsel were submitted and

the State did not present any other type of evidence in support of its response.  The state trial court

did not hold an evidentiary hearing, by affidavit or otherwise, nor did it enter findings of fact or

conclusions of law.  On December 7, 2011, the Texas Court of Criminal Appeals denied petitioner's

applications without written order.  On January 3, 2012, petitioner filed a motion to extend time to

file a petition for discretionary review with the Texas Court of Criminal Appeals.  The Clerk of

Court advised petitioner that such a motion was not proper and that no action would be taken.

On January 18, 2012, petitioner filed with this Court, the instant federal petition for a writ of

habeas corpus.[8]  On April 5, 2012, respondent filed a motion to dismiss petitioner's federal habeas

application with prejudice pursuant to 28 U.S.C. § 2244(d).  On October 22, 2012, the undersigned

entered a Report and Recommendation to grant respondent's motion to dismiss.  On November 9,

2012, the United States District Judge entered an order adopting the Report and Recommendation

and dismissing petitioner's federal habeas corpus application as time barred.  On September 17,

2013, after additional motions and briefing, the Court vacated the order dismissing petitioner's

---

[7] The Texas Court of Criminal Appeals decision in *Williams v. State*, 253 S.W.2d 673 (Tex.Crim.App. 2008) was issued several years before the filing of the State's answer.  In *Williams*, the state's high court construed the plain language of section 481.134 of the Texas Health and Safety Code to mean that the mandatory cumulation of sentences provision of subsection (h) does not apply when a defendant's other conviction is also for a criminal offense listed within section 481.134.

[8] *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

habeas application and reopened this case.  Currently pending before the Court is a motion for leave to amend filed by petitioner on May 16, 2016 wherein petitioner appears to argue new claims of an involuntary plea, ineffective assistance of counsel for failing to investigate, and trial court error in failing to inquire into the specifics of the plea agreement and admonish petitioner as to the relevant law.  By his motion, petitioner also re-argues the previously asserted claims.

On August 10, 2016, the Court conducted an evidentiary hearing regarding limitations.  Petitioner, represented by appointed counsel, appeared at the hearing.  Petitioner was called as a witness and testified he never discussed with defense counsel, prior to sentencing, whether the state trial court might stack his sentences <u>after</u> he accepted the State's plea offer and averred he did not even know stacking was a possibility, based on the State's plea offer.  Petitioner further testified neither the State nor the state trial judge stated, during the sentencing hearing, that any of the sentences would run consecutively or cumulatively to one another.  Petitioner averred that not only did the trial judge not state that any of his sentences would run consecutive or cumulatively, but that the judge specifically ordered the sentences to run concurrent.

Petitioner testified he provided his fingerprint and signed the fingerprint page that was eventually attached to the Judgments on June 21, 2006, but that he was not presented with the written Judgments, signed or unsigned, when he completed the fingerprint page.  Petitioner testified the first time he saw the written Judgments was in September 2010, when he was confined in Randall County Jail where he was participating in the PREP Program in anticipation of his upcoming parole.  Petitioner explained he had received the September 16, 2010 time sheet from his parole attorney reflecting a 30-year sentence of record and then obtained copies of the Judgments from the district clerk's office.  Petitioner testified there was no reason to believe, prior to receiving

the September 16, 2010 time sheet, that his sentences had been ordered to be stacked. Petitioner advised he was removed from the PREP Program when TDCJ changed its records to show his sentences were stacked because the cumulative length of the stacked sentence rendered him ineligible to continue in the program.

Petitioner testified he believed the inclusion of the cumulative sentencing language in the two Judgments was an error by the trial court so he drafted a motion for nunc pro tunc to correct the Judgments, attaching explanatory correspondence, and signing and mailing the motion on December 30, 2010. Petitioner also testified he chose to file the motion for nunc pro tunc as a result of reading a Legal Handbook prepared by State Counsel for Offenders which was in the prison law library. Petitioner averred he did not hear anything from the trial court with regard to his motion and that on April 29, 2011, having received no response from the state trial court, petitioner drafted a second motion for nunc pro tunc, signed and mailed the motion to the trial court. Petitioner testified he filed state habeas applications to correct the state trial court's errors in the Judgments after being specifically advised in the State's answer and the trial court's order that the errors he presented needed to be addressed in state habeas proceedings.

On August 19, 2016, counsel for petitioner filed a Memorandum in support of petitioner's habeas application. On August 25, 2016, respondent filed a post-hearing brief opposing relief.

II.
PETITIONER'S CLAIMS

Petitioner claims his sentences are in violation of the United States Constitution because:

1.     Petitioner's plea bargain agreement with the State was violated by the sentences in Cause Nos. 52,536 and 52,537 being ordered to run consecutive to and after the completion of the sentence in Cause No. 52,538, resulting in a breach of the plea agreement, prosecutorial misconduct, and a violation of due process;

2.     Trial counsel was ineffective in failing to (a) prevent the assessment of the illegal consecutive sentences in Cause Nos. 52,536 and 52,537, (b) object to the violation of the plea agreement, (c) correct the trial court's Judgment after it was entered, (d) request petitioner be allowed to withdraw his plea or appeal, and/or (e) for giving erroneous advice as to the punishment petitioner would receive; and

3.     The state trial court abused its discretion in ordering the sentences in Cause Nos. 52,536 and 52,537 to begin after the completion of, and run consecutive to, the sentence in Cause No. 52,538 because the trial court did not follow the plea agreement, and because the cumulation of the sentences was not permitted by case law or statute.

III.

**TIMELINESS OF PETITIONER'S HABEAS APPLICATION**

Title 28 U.S.C. § 2244(d)(1) establishes a one-year limitation period in which to file an application for a federal writ of habeas corpus by a person in custody pursuant to a state court judgment.  That subsection provides:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Title 28 U.S.C. § 2244(d)(2) further provides:

The time during which a properly filed application for State post-conviction or other

collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The record does not reflect that any unconstitutional State action impeded petitioner in his filing of the instant federal writ, 28 U.S.C. § 2244(d)(1)(B), nor do petitioner's claims involve a constitutional right recognized by the Supreme Court in the last year and made retroactive to cases on collateral review, 28 U.S.C. § 2244(d)(1)(C). Consequently, the statutory time period in this case either began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, " *see* 28 U.S.C. § 2244(d)(1)(A), or the date on which the factual predicate of petitioner's claims could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D).

Based on the record and the testimony by petitioner at the evidentiary hearing, the undersigned finds petitioner could not have reasonably discovered the factual predicate of his claims until a date subsequent to the final conviction date. Although petitioner originally argued he did not discover the factual predicate of his claims until November 14, 2010 (a Sunday) when he received correspondence from his parole attorney confirming certain of his sentences were stacked, petitioner testified at the evidentiary hearing that he first obtained copies of the Judgments in late September 2010. In his post-hearing brief, counsel for petitioner acknowledges petitioner's discovery date should be September 30, 2010 to account for the time when petitioner first received copies of the Judgments. Respondent, in her post-hearing brief, argues that if the Court is to use the discovery date provision of the statute as the beginning of the limitation period, the Court should use the date September 16, 2010, the date of the first TDCJ time sheet print out reflecting petitioner's sentence of record as 30 years. While the record establishes the time sheet changing how the sentences were treated was created September 16, 2010, it does not reflect when petitioner, who was an inmate at

the Randall County Jail at that time, received a copy of that print out. While it is possible petitioner

received the copy of the TDCJ print out some time prior to September 30, 2010, the record does not

affirmatively show the date of receipt. Therefore, the undersigned finds petitioner could have

certainly, through the exercise of due diligence, discovered the factual predicate of his claims by

September 30, 2010.

Utilizing September 30, 2010 as the date petitioner discovered his sentences had been

ordered to run consecutively as the beginning of the one-year limitation period, any federal habeas

application was due on or before September 30, 2011, absent statutory or equitable tolling.

Petitioner's state habeas applications were filed on October 12, 2011, twelve (12) days after the

expiration of the limitation period, and did not serve to toll the limitation period unless there is

some other statutory or equitable tolling period prior to petitioner's filing of his state habeas

applications. The initial issue here is whether petitioner's "Motion for Nunc Pro Tunc," presumably

submitted to prison authorities for filing on December 30, 2010 and again on April 29, 2011, and

pending before the state trial court until August 16, 2011, statutorily or equitably tolled the

limitation period.

### A. Statutory Tolling

The April 29, 2011 nunc pro tunc motion ["second motion"] shows to have been docketed

by the Clerk on May 4, 2011.[9] Although the December 30, 2010 motion ["first motion"] does not

clearly show when it was docketed, it appears it may have been received by the Clerk on January 10,

2011 and it is clear it was received at some point because the state trial court filed it on August 22,

---

[9]As discussed above, the nunc pro tunc motions do not appear to have actually been "filed" until August 22, 2011, six (6) days after the state trial court's denial of the motion.

2011 as evidenced by the Clerk's file mark of that date. [Docket Entry 81-1, at 6-8, 26, 63-64].

Consequently, there appears to be no dispute that the two (2) nunc pro tunc motions were filed.

Further, it appears petitioner's nunc pro tunc motions were "properly filed" within the meaning of

28 U.S.C. § 2244(d)(2) because their "delivery and acceptance" were in compliance with the

applicable laws and rules governing filings of motions of that type. Petitioner attests he mailed his

first motion on December 30, 2010, and in the absence of controverting evidence,[10] the undersigned

will use this mailing date as the filing date of the first motion.

 The first issue to be addressed is whether petitioner's motions statutorily tolled the limitation

period. That depends on whether the nunc pro tunc motions could constitute "application[s] for

State post-conviction or other collateral review with respect to the pertinent judgment." It does not

appear petitioner's motions could qualify as applications for "State post-conviction" review, thus,

the court's inquiry is whether the nunc pro tunc motions met the definition of "other collateral

review" and whether such review was "with respect to the pertinent judgment."

 "Collateral review" refers to judicial review of a judgment in a proceeding that is not part of

direct review. *Wall v. Kholi*, 562 U.S. 545, 552 ,131 S.Ct. 1278 (2011). Specifically, review

involves the "act of inspecting or examining" or "judicial reexamination" and denotes a "looking

over or examination with a view to amendment or improvement."

 Petitioner, based on the Legal Handbook published by the Texas Department of Criminal

Justice, State Counsel for Offenders, filed motions for nunc pro tunc in an attempt to have the state

trial court enter an order self-correcting mistakes in petitioner's sentences. In Texas, the "purpose

---

[10]The Court again notes the January 10, 2011 online docket entry in Cause No. 52,536 that a letter to the judge from defendant, with attachments, was filed.

of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time." *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex.Crim.App. 1988). A nunc pro tunc order may correct clerical errors in a judgment, but not judicial omissions. *Id.* A clerical error is one which does not result from judicial reasoning or determination. *Id.* The classification of an error as clerical or judicial is a question of law. *Id.*

Even if a typical motion for nunc pro tunc under Texas law does not meet the definition of "other collateral review" so as to statutorily toll the limitation period for filing a federal habeas corpus petition, *cf. Harrelson v. Swan*, 381 Fed.Appx. 336 (5th Cir. 2010), the nunc pro tunc motions here were not typical. Instead, the motions petitioner filed were not clearly seeking only clerical error correction, nor were they seeking only judicial error correction. They were, in some respect, "hybrid" motions. The motions could be construed as seeking correction of a "clerical error," *i.e.*, merely seeking to have the written judgment reflect the actual oral pronouncement of sentence. That view would be appropriate if the state court judge recognized the oral pronouncement of sentence was different from the written judgment and merely corrected the written judgment. On the other hand, even if the oral pronouncement of sentence did not include any statement that one sentence was cumulative or stacked on another sentence, but the state court judge determined stacked sentences should be imposed, either because he determined such was statutorily required or for some other reason, then any error stacking the sentences, notwithstanding oral pronouncement of sentence to have been different, would appear to have been a judicial decision and the error would be judicial rather than clerical, although the oral pronouncement of the sentence would still control. If the oral pronouncement of sentence controls, and if the trial court

was silent as to whether the sentences would run concurrently or consecutively, then the written

judgments which stacked one or more of the sentences and which were entered <u>after</u> oral

pronouncement, are <u>invalid</u>.  Stated differently, if the stacking language was included inadvertently

(perhaps erroneously included by the typist who prepared the judgments), then the error would

appear clerical.  If the trial judge intentionally included the stacking language, because he was of the

opinion the statute required stacking or included the stacking language for some other reason, then it

would appear to be a judicial error and state habeas, rather than a nunc pro tunc motion would be the

appropriate remedy.  Petitioner, however, would have had to have known, some how, which type of

error had occurred in order to know which procedural vehicle (nunc pro tunc motion or state habeas)

to use.  If the state trial judge ruling on the nunc pro tunc had been the sentencing judge, then he

might have an independent recollection of what occurred at sentencing, including what the oral

pronouncement of sentence was and why.  Here, the trial judge who ruled on the nunc pro tunc

motions was not the same judge who issued sentence and without a transcript or affidavit from one

of the participants in the hearing, it would not seem possible for the judge to know what had

transpired in open court.

The state trial court, without discussion, treated the motions as seeking correction of a

judicial error and, therefore, found them inappropriate procedural vehicles for nunc pro tunc

judgments.[11]  The state trial court, however, did not make the determination that petitioner's claims

were state habeas claims, rather than nunc pro tunc judgment claims, until almost eight (8) months

after the limitation period had begun to run.  Even after classifying petitioner's claims as raising

---

[11]Respondent has not advised this Court whether there was another proper procedural vehicle by which petitioner could present his claims of judicial error to the state trial court for self-correction without involving the higher state court.

judicial error and asserting petitioner could only raise such claims by seeking state habeas review, the state trial court did not construe petitioner's motions as filings for state habeas review under article 11.07 of the Texas Code of Criminal Procedure.[12]  When the judicial error in sentencing claims were raised on state habeas, the State answered simply that petitioner's consecutive sentences were proper, and did not specifically address any of petitioner's particular claims.  The state trial court, presided over by a different district judge, did not hold a hearing, enter findings of fact or conclusions of law, or respond in any way to petitioner's claims of judicial error in sentencing.

Petitioner's claims in his nunc pro tunc motions could clearly be considered to have "sought review" of the judgments and, indeed, the state court construed them in that manner, identifying them as claims of judicial error but determining, based on the nature of the title of the motion, that relief was not available.  The undersigned finds that by challenging the judgments, placing the propriety of the judgments at issue, and seeking review of the judgments, the nunc pro tunc motions could qualify as "other collateral review."  The undersigned thus finds the motions filed by petitioner in this case on December 30, 2010 and April 29, 2011, entitled as motions "for nunc pro tunc judgment," could arguably have <u>statutorily</u> tolled the limitation period in this case.  However, because the undersigned finds <u>equitable</u> tolling to apply, it is not necessary to make a finding that the limitation period was <u>statutorily</u> tolled by the filing of petitioner's nunc pro tunc motions.

---

[12] *Pro se* litigants are entitled to liberal construction of their pleadings, and courts should determine the true nature of a pleading by its substance, not its label.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005).  While the pleadings may have been procedurally deficient as 11.07 motions, *e.g.*, not utilizing the adopted form for 11.07 applications, or containing all of the information required by the form and setting forth individual grounds for relief, as noted by the State and the trial court, petitioner was asserting contentions of judicial error to be raised and addressed in an 11.07 application.

B. <u>Equitable tolling</u>

A federal habeas petitioner is entitled to equitable tolling if he can show (1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010). Equitable tolling applies principally where the petitioner is actively misled by the defendant about the cause of action. Determinations of equitable tolling are made on a case by case basis.

Petitioner drafted and presumably delivered his <u>first</u> Motion for Nunc Pro Tunc Judgment and accompanying letter to prison authorities for mailing on December 30, 2010. While it is unclear when the Potter County district clerk actually received petitioner's motion, the online docket does reflect an entry for "file letter to judge from defendant w/ attachments" was made on January 10, 2011, which would indicate it may have been received by the State and state trial court at that time. It has been established, by the fact that the December 30, 2010 motion was file marked in August 2011, that it was, in fact, received. For some reason, no action was taken on the <u>first</u> motion, resulting in petitioner submitting the <u>second</u> motion in April 2011. If the State had responded to petitioner's <u>first</u> motion with the answer it filed after petitioner's <u>second</u> motion had to be submitted, *i.e.*, advising petitioner he had filed a motion raising judicial error that could not be corrected by a nunc pro tunc order by the trial court and, instead, had to be raised in a state habeas proceeding, petitioner would have been able to diligently file a state habeas application after receiving the State's answer (just as he did in October 2011 after the State's answer in August 2011). A state habeas application filed in March 2011 or even April 2011 would have tolled limitations until it was ruled on. The undersigned finds petitioner was not at fault for the delay between the submission of his <u>first</u> motion through the time he re-urged his request for judicial

relief by submitting the <u>second</u> motion.

The limitation period began September 30, 2010.  The limitation period should be equitably tolled from December 30, 2010 (the date petitioner submitted his <u>first</u> nunc pro tunc motion to prison authorities for filing) to April 29, 2011 (the date petitioner submitted his <u>second</u> nunc pro tunc motion to prison authorities for filing), a period of 121 days.  Petitioner's state habeas application, filed on October 12, 2011 and denied on December 7, 2011, statutorily tolled the limitation period for an additional 57 days, rendering petitioner's federal habeas due on or before March 26, 2012.  Petitioner filed his federal habeas application with this Court on January 18, 2012.  The instant petition is timely even if tolling is only for the limited time between petitioner's <u>first</u> motion for nunc pro tunc relief and his <u>second</u> motion, which was necessitated by the lack of any action on the <u>first</u> motion.

In sum, petitioner became aware of the cumulative provision in the judgments of two (2) of his cases in late September 2010.  After parole counsel, on or about November 14, 2010, confirmed that TDCJ had changed his sentences to run consecutively, petitioner submitted his <u>first</u> motion to correct the cumulation directive in the Judgments on December 30, 2010 by submitting his <u>first</u> nunc pro tunc motion.  The undersigned finds petitioner diligently pursued relief after discovering his sentences had been stacked and after obtaining confirmation from his parole attorney that his sentences had indeed been modified to run consecutively.

Petitioner has shown extraordinary circumstances sufficient to warrant the application of equitable tolling.  First, it appears petitioner's sentence was improper as the written judgment does not reflect the oral pronouncement of sentence.  Second, there was unnecessary delay of approximately four (4) months in consideration of petitioner's nunc pro tunc motions.

Consequently, respondent's motion to dismiss as time barred should be denied as to Cause Nos. 52,536 and 52,537.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Dismiss as Time-Barred filed by respondent LORIE DAVIS be DENIED as to petitioner's claims relating to Cause Nos. 52,536 and 52,537.  It is the undersigned's further RECOMMENDATION that any challenges to petitioner's convictions and sentences in Cause Nos. 52,538 and 53,105, identified as cases "under attack" in his federal habeas application, be dismissed as time-barred because the sentences in those case were not consecutive to any other sentence.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___/4/th___ day of September 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).