IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SHEON ANTHONY POLK, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-0022 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO
## GRANT PETITION FOR A WRIT OF HABEAS CORPUS

Came for consideration the Petition for a Writ of Habeas Corpus filed by petitioner

SHEON ANTHONY POLK. For the reasons set forth below, it is the opinion of the undersigned

United States Magistrate Judge that the petition should be GRANTED.

I.
STATE PROCEEDINGS

On March 8, 2006, in the 47th Judicial District Court of Potter County, Texas, petitioner

was indicted on four (4) charges, *i.e.*, a 2nd degree and a 3rd degree felony offense of possession of

a controlled substance, and two (2) charges of the 2nd degree felony offense of possession of a

controlled substance in a Drug Free Zone (DFZ). *State v. Polk*, Cause Nos. 52,536, 52,537,

52,538, and 52,539. These offenses were alleged to have occurred on October 5, 2005 (both

DFZ offenses, #52,538 and #52,539), October 13, 2005 (the 2nd degree possession offense,

#52,536), and November 7, 2005 (the 3rd degree possession offense, #52,537).  Each indictment

contained a punishment enhancement paragraph alleging a prior felony conviction.

On April 24, 2006, the State prosecutor sent a plea offer letter to petitioner's attorney

extending an offer of twenty (20) years confinement in each case in exchange for petitioner's

guilty plea and judicial confession to each of the four (4) Potter County cause numbers. [Docket

#16, at 14-15].  The offer further stated the "sentences may run concurrent with his *Randall*

*County* case(s)."[1]  (emphasis added).  The offer stated it was contingent upon petitioner accepting

it and entering pleas on or before May 8, 2006, and no further criminal history being found.

Other than stating the Potter County sentences could run concurrent with the case petitioner had

in Randall County, the plea offer did not indicate the manner in which petitioner's Potter County

sentences would be calculated, *i.e.*, concurrently or consecutively.  However, the plea offer letter

stated that if petitioner <u>did not</u> plead, the State <u>would</u> seek to have the sentences run

<u>consecutively</u>.  The letter stated:

> If the offer is not accepted by that time the offer is withdrawn and this matter will be
> set for trial.  If these matters are tried there will be separate trials and the State will
> seek cumulative sentencing as to each charge.

The record does not reflect petitioner accepted or declined this offer by May 8, 2006, but no

guilty pleas were entered on or before May 8, 2006.  The record does not reflect any other written

plea offers from the State except the one detailed above.

On May 25, 2006, the State indicted petitioner for the lesser 3rd degree felony offense of

possession of a controlled substance in a drug free zone, enhanced, for the October 5, 2005

---

[1]On October 4, 2005, petitioner had been charged by complaint in Randall County, Texas, with the first degree felony offense of possession with intent to deliver a controlled substance in a DFZ.  *State v. Polk*, No. 17,478-C.  Petitioner was re-indicted under Cause No. 18,268-C on August 9, 2006.

offense which had originally been indicted as a 2nd degree felony under Cause No. 52,539. *See State v. Polk*, No. 53,105. The State then dismissed Cause No. 52,539.

On June 21, 2006, petitioner was provided "Written Plea Admonishments" in all causes. In Cause Nos. 52,536 and 52,537 [the non-DFZ possession offenses], the admonishments did <u>not</u> inform petitioner the sentences assessed in those cases would <u>not</u> run concurrently with the sentences for his DFZ possession offenses [Cause Nos. 52,538 and 53,105]. In Cause No. 52,538 [a DFZ offense], the admonishments noted petitioner's minimum sentence was increased by five (5) years as a DFZ offense but made no mention of how the sentence in that case would run or be calculated with regard to petitioner's other sentences. Petitioner's admonishments in Cause No. 53,105 [a DFZ, enhanced offense], made no mention of how any of petitioner's sentences would be calculated. The record does not reflect that the State, at any time, filed a motion to cumulate sentences in any of the four (4) cases.

After signing the admonishments and a "Judicial Confession" form, the state district court for Potter County, after finding the confession knowingly and voluntarily entered, approved the admonitions and received petitioner's judicial confession of guilt. Petitioner then entered pleas of guilty to all of the charged offenses in open court. The record does not contain any written plea bargain between the State and petitioner.[2] While the record contains the State's written "Punishment Recommendations" in each case, none of the written forms indicate if the recommendations were "MUTUALLY AGREED AND RECOMMENDED TO THE COURT" or whether "THE STATE AND THE DEFENSE HAVE *NO AGREED RECOMMENDATION*

---

[2]The admonishments stated, "If no plea bargain exists, the recommendation of the prosecuting attorney as to punishment is not binding on the Court. If a plea bargain does exist, the Court will inform you whether it will follow the agreement in open court and before any finding on your plea."

FOR THE COURT." In each case, the State recommended a 15-year term of imprisonment (rather than the 20-year written plea offer which had been made prior to the reduced charge being brought in Cause No. 53,105) and a fine of $100 in each cause number.[3] In Cause No. 52,538, the punishment recommendation from the State included a specific recommendation that an "affirmative finding of drug free zone" be made but there was no mention of consecutive sentences. There was no similar recommendation made in Cause No. 53,105, the other DFZ case.

The state trial court accepted petitioner's guilty pleas and adjudicated petitioner guilty of the charged offenses. The trial court's "Docket Sheet" in each case reflects a June 21, 2006 entry indicating the trial court ordered punishment assessed at "15 years TDC." These docket entries or "Orders of Court" are silent and make no reference to any sentence running consecutively to any other sentence. No transcription of the guilty plea and sentencing hearing is included in the record. Consequently, these docket sheets appear to be the only simultaneous memorialization of the proceedings.[4]

One day later, on June 22, 2006, the trial court signed written Judgments in each case. In each of the two (2) Judgments entered for the two (2) possession of a controlled substance in a DFZ offenses, the state trial court assessed petitioner's punishment at fifteen (15) years imprisonment in the Texas Department of Criminal Justice, Institutional Division (TDCJ-CID) and a $100 fine, the sentences to run concurrently with each other and to be credited for time

---

[3]At an evidentiary hearing in this court, petitioner explained the oral offer was reduced from 20 years per case to 15 years per case prior to the guilty plea hearing. In her Answer, respondent objects to the Court considering petitioner's hearing testimony under *Cullen v. Pinholster* (*see* Evidentiary Hearing discussion below).

[4]According to respondent, a court reporter was present at the sentencing hearing but attempts by respondent to obtain a copy of a transcript have been unsuccessful. No evidence of what transpired at the sentencing hearing, in the form of a transcription, oral recording, or affidavit has been made available to this Court and no such document has been found in the state court records.

served.[5] *State v. Polk*, Cause Nos. 52,538 and 53,105.  In each of the two (2) Judgments entered

for the two (2) non-DFZ possession of a controlled substance offenses, the state trial court again

assessed petitioner's punishment at fifteen (15) years imprisonment in TDCJ-CID and a $100

fine.  The written Judgments in both of those non-DFZ cases, however, also included the

following language:

> And the said defendant on the 21ˢᵗ day of June, 2006 having been legally convicted
> of and sentenced for the offense of Possession of a Controlled Substance in a Drug
> Free Zone, Enhanced, Third Degree felony enhanced pursuant to Sec. 12.42[a][3],
> Penal Code, in Cause No. 52,538-A in the 47ᵗʰ Judicial District Court of Potter
> County, Texas and his punishment having been assessed and adjudicated at
> imprisonment in the Texas Department of Criminal Justice, Institutional Division for
> fifteen (15) years, it is further ORDERED AND ADJUDGED *that the punishment*
> *herein adjudged against the defendant shall begin when the judgment and sentence*
> *in said Cause No. 52,538-A shall have ceased to operate.*

(emphasis added).  By the inclusion of the above-recited language, both Judgments provided that

the 15-year sentences in those non-DFZ cases were to begin only when the 15-year sentence in

Cause No. 52,538, one of the DFZ cases, was "completed."  *State v. Polk*, Cause Nos. 52,536 and

52,537.  Notwithstanding the language in the written judgments, the trial court's "Docket Sheet"

in each of those cases (Nos. 52,536 and 52,537) reflects only that Judgments were signed on June

22, 2006, and do not indicate any further specifics, *i.e.*, concurrent or consecutive service, with

regard to the sentences assessed.  Fingerprint pages attached to the Judgments reflect petitioner's

fingerprint and signature.  Those fingerprint pages, however, were dated June 21, 2006, the day

before the written Judgments were signed by the trial court.

On June 21, 2006, the trial court had certified that petitioner's cases were plea-bargained

---

[5] Affirmative "Findings on Drug Free Zone" were made in each case although only specifically recommended by the State in Cause No. 52,538.  The Judgment in Cause No. 52,538 also found petitioner guilty of a 3ʳᵈ degree felony rather than a 2ⁿᵈ degree felony as charged in the indictment and as identified in the Written Plea Admonishments.

cases and that petitioner had no right of appeal. On July 14, 2006, however, petitioner filed a notice of appeal for each conviction and sentence. In the notices of appeal, petitioner argued his guilty pleas were involuntary due to coercion by, or ineffective assistance of, counsel. Specifically, petitioner argued counsel warned him on June 20, 2006 that if he chose to go to trial on his cases before the sitting trial court judge, the judge would "hammer" him and would "stack [his] sentences." Petitioner maintained he was "scared and coerced to take the plea of 15 years." In those appeal notices, petitioner did not mention or complain about the Judgments in Cause Nos. 52,536 and 52,537 directing his sentences to run consecutive to his sentence in Cause No. 52,538. As is set out below, however, those sentences were not running consecutively at that time and it has not been established that petitioner had read, or even seen, the written judgments when he filed his appeal.

On August 8, 2006, TDCJ-CID received possession of petitioner. From the date of his arrival at TDCJ-CID, all four (4) of petitioner's 15-year sentences were calculated as concurrent sentences and none of the sentences were calculated as consecutive sentences. TDCJ records reflected all of petitioner's Potter County sentences begin dates to be in early November 2005.

On October 17, 2006, the Court of Appeals for the Seventh District of Texas dismissed petitioner's appeals pursuant to Rule 25.2(d) of the Texas Rule of Appellate Procedure (which requires an appeal be dismissed if a certification showing the defendant has a right to appeal has not been made part of the record). *Polk v. State*, No. 07-06-0272-CR.

On September 22, 2009, petitioner was convicted in Randall County, Texas, pursuant to a guilty plea, of the 1st degree felony offense of possession of a controlled substance with intent to deliver in a DFZ and was assessed a 20-year sentence. Petitioner's 20-year sentence was to run

<u>concurrently</u> with his 15-year sentences assessed in Potter County, and TDCJ records reflect a sentence begin date of November 14, 2005.  After the Randall County conviction, all of petitioner's sentences, from both Potter County and Randall County, continued to be calculated by TDCJ as <u>concurrent</u> sentences.

On April 21, 2010, when petitioner was nearing parole eligibility, he completed a form on a parole attorney's website in an attempt to retain counsel to assist in his parole process. Thereafter, petitioner received correspondence from the attorney identifying, *inter alia*, petitioner's offense history, parole eligibility, projected release date and maximum sentence discharge date.  This correspondence reflected all of petitioner's 15-year Potter and the 20-year Randall County sentences were running concurrently, that petitioner was eligible for parole on November 4, 2010, and that his maximum sentence discharge date was November 14, 2025.

In May 2010, the Texas Board of Pardons and Paroles issued notices to trial officials of the pending consideration of petitioner's release to parole.  On August 10, 2010, petitioner's parole attorney requested an interview with "the voter" of petitioner's case before a parole decision was made.

Between August 16 and September 16, 2010, TDCJ-CID adjusted petitioner's 15-year sentences in Cause Nos. 52,536 and 52,537 to run consecutively to the 15-year sentence in Cause No. 52,538 instead of concurrently.[6]  On November 14, 2010, petitioner received correspondence from his parole attorney advising petitioner that the attorney had confirmed that some of his 15-year sentences were now running consecutively and that he would not be able to assist petitioner

_____

[6]A time sheet in the record dated August 16, 2010 reflected petitioner's sentences were running concurrently.  A time sheet in the record dated September 16, 2010, however, reflected petitioner's sentence of record as 30 years (indicating consecutive 15-year sentences) with a maximum expiration date of November 4, 2035.

in obtaining parole.

From approximately December 30, 2010 through April 29, 2011, petitioner sought judicial review of the sentences by the state trial court alleging his sentences "were erroneously ordered to run consecutively." Petitioner requested the trial court "order the reform of the judgments by deleting the cumulation order and allow all sentences be served concurrently." On August 16, 2011, the state trial court, presided over by a different state district judge,[7] denied relief finding petitioner had failed to show that the judgments in Cause Nos. 52,536 and 52,537 contained clerical errors subject to correction by the particular trial court motions petitioner had filed and advising petitioner that his claims that the Judgments in Cause Nos. 52,536 and 52,537 contained judicial errors could only be addressed by the Texas Court of Criminal Appeals in an application for a state writ of habeas corpus. No sentencing transcript was cited by the state trial court in its order denying petitioner relief, and it does not appear one was produced.

On October 12, 2011, petitioner filed identical state applications for writs of habeas corpus in all four (4) Potter County cause numbers challenging the stacking of the 15-year sentences assessed in Cause Nos. 52,536 and 52,537 (the non-DFZ possession convictions) on the 15-year sentence assessed in Cause No. 52,538 (one of the DFZ possession convictions). *Ex parte Polk*, Cause Nos. 76,790-01, -02, -03 and -04. Petitioner alleged a breach of the plea agreement, ineffective assistance of counsel, and abuse of discretion by the state trial court judge in imposing an illegal sentence. Petitioner requested he either be given a new trial in each cause, or that the habeas court "reform the Judgment and delete the cumulations (sic) order allowing [sentences] to run concurrent as the negotiated plea agreement clearly states from the district

---

[7]The state trial court judge who presided over petitioner's case passed away March 12, 2010.

attorney."

On November 10, 2011, the State filed an answer denying the allegations in petitioner's state habeas applications. The State noted petitioner's grounds were "primarily based upon his contention that his sentence in Cause No. 52,536-A was improperly ordered to run cumulatively with his sentence in Cause No. 52,538-A." The State argued exclusively that petitioner's sentences in Cause Nos. 52,536 and 52,537 were "mandatorily cumulated with his drug free zone sentence in Cause [No.] 52,538-A pursuant to section 481.134(h) [of the Texas Health and Safety Code]." The State argued that Code section "makes [it] mandatory that punishment for a crime committed under that section may not run concurrently with 'a conviction under any other criminal statute.'" The State erroneously maintained that since petitioner's sentences in Cause Nos. 52,536 and 52,537 were not based upon section 481.134 governing drug-free zones, they fell into the category of "conviction[s] under any other criminal statute." The State did not argue any other basis to support the stacking of petitioner's sentences, nor did it specifically address whether the plea bargain agreement was violated or address the effectiveness of trial counsel. Neither the State nor petitioner supplemented the record with an affidavit from either trial counsel or the State prosecutor concerning the plea negotiations in this case, the specifics of any plea bargain agreement, or the parties' recollection of the trial court sentencing proceedings. Nor did the State present any other type of evidence in support of its response.

The state trial court did not hold an evidentiary hearing, by affidavit or otherwise, nor did it enter findings of fact or conclusions of law or address the merits of the state habeas application. On December 7, 2011, the Texas Court of Criminal Appeals denied petitioner's state habeas applications without written order. On January 3, 2012, petitioner filed a motion to

extend time to file a petition for discretionary review with the Texas Court of Criminal Appeals. The Clerk of the Texas Court of Criminal Appeals advised petitioner that such a motion was not proper in a habeas proceeding and that no action would be taken.

II.
INITIAL FEDERAL COURT PROCEEDINGS

On January 18, 2012, petitioner filed[8] a federal petition for a writ of habeas corpus alleging his Potter County sentences are in violation of the United States Constitution because:

1. The State breached its plea bargain agreement with petitioner because the sentences in Cause Nos. 52,536 and 52,537 were ordered to run consecutive to and after the completion of the sentence in Cause No. 52,538, which also resulted in prosecutorial misconduct and a violation of due process;

2. The state trial court abused its discretion in ordering the sentences in Cause Nos. 52,536 and 52,537 to begin after the completion of, and run consecutive to, the sentence in Cause No. 52,538 because:

    a. the trial court did not follow the plea agreement between petitioner and the State; and

    b. the cumulation of the sentences violated state case law and/or statute.

3. Trial counsel was ineffective in failing to:

    a. object to the State's breach of the plea agreement;

    b. object to the illegal consecutive sentences assessed in Cause Nos. 52,536 and 52,537;

    c. take steps to correct the trial court's Judgment after it was entered, including requesting petitioner be allowed to withdraw his plea or appeal the improper sentence; and/or

    d. give correct advice as to the punishment petitioner would receive.

---

[8] *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

On April 5, 2012, respondent filed a motion to dismiss petitioner's federal habeas application with prejudice pursuant to 28 U.S.C. § 2244(d). On October 22, 2012, the undersigned entered a Report and Recommendation to grant respondent's motion to dismiss. On November 9, 2012, the United States District Judge entered an order adopting the Report and Recommendation and dismissing petitioner's federal habeas corpus application as time barred. On September 17, 2013, after additional motions and briefing, the Court vacated the order dismissing petitioner's habeas application and reopened this case.[9]

## III.
## EVIDENTIARY HEARING

On August 10, 2016, the Court conducted an evidentiary hearing to consider evidence and argument on the issue of the statute of limitations and when it began, whether the statute of limitations was tolled for any period of time, the propriety of petitioner's four (4) state sentences, and whether any exception to a time bar was applicable under the circumstances of petitioner's state cases. Petitioner, represented by appointed counsel, appeared at the hearing and was called as a witness.

While petitioner's testimony at that hearing was relevant to the determination of whether his federal habeas application was timely filed, such testimony cannot be considered in this Court's review of the state court's decision to deny petitioner habeas corpus relief. Federal review of a state court's state habeas decision "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct.

---

[9]On May 16, 2016, petitioner filed a motion for leave to amend his habeas petition wherein he appeared to argue new claims of an involuntary plea, ineffective assistance of counsel for failing to investigate, and trial court error in failing to inquire into the specifics of the plea agreement and admonish petitioner as to the relevant law. By his motion, petitioner also re-argued the previously asserted claims. On September 21, 2016, the Court denied petitioner's motion to amend his habeas petition.

1388, 1398, 179 L.Ed.2d 557 (2011).  Consequently, petitioner's testimony on the limitations issue will not be relied upon by this Court in determining whether federal habeas corpus relief is appropriate in this case.

IV.
<u>SUBSEQUENT FEDERAL COURT PROCEEDINGS</u>

On August 19, 2016, counsel for petitioner filed a Memorandum arguing petitioner's habeas application was timely filed.  On August 25, 2016, respondent filed a post-hearing brief reasserting her arguments that petitioner's habeas application was time barred.  On September 14, 2016, the undersigned entered a Report and Recommendation to deny respondent's motion to dismiss petitioner's federal habeas application as time barred.  The undersigned determined petitioner could not have reasonably discovered the factual predicate of his claims until a date subsequent to the final conviction date.  Utilizing September 30, 2010 as the date petitioner discovered his sentences had been ordered to run consecutively as the beginning of the one-year limitation period, and finding equitable tolling applicable due to extraordinary circumstances, including the inaction of the state trial court for the time period petitioner's first "nunc pro tunc" motion was submitted for filing until the date his second motion was submitted for filing, the undersigned found petitioner's claims relating to Cause Nos. 52,536 and 52,537 were not time barred.  On September 29, 2016, the United States District Judge entered an Order overruling respondent's objections to the Report and Recommendation, adopting the Report and Recommendation, and granting in part, denying in part, respondent's Motion to Dismiss as Time Barred.

V.
RESPONDENT'S ANSWER

On December 2, 2016, respondent filed an answer to petitioner's habeas application.

Petitioner did not file a reply to respondent's answer. In her answer, respondent thoroughly and

accurately briefed statutory and case law regarding the applicable standard of review, as well as

the application of presumptions and burdens of proof, in federal habeas corpus proceedings. It is

not necessary to repeat respondent's briefing regarding the standard of review this Court must

follow, but a short summary of the governing statutory standard under 28 U.S.C. § 2254(d) will

be set out.

> A federal court shall not grant habeas corpus relief to a petitioner convicted under
> a state court judgment with respect to any claim that was adjudicated on the merits
> in state court proceedings unless the state court's adjudication of the relevant
> constitutional claim:
>
> 1.      was contrary to federal law then clearly established by the holdings of the
>         United States Supreme Court; or
>
> 2.      involved an unreasonable application of clearly established federal law as
>         determined by Supreme Court precedent; or
>
> 3.      was based on an unreasonable determination of the facts in light of the record
>         before the state court or evidence presented in the state court proceeding.

*Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).


VI.
BREACH OF PLEA AGREEMENT:
DUE PROCESS VIOLATION/ PROSECUTORIAL MISCONDUCT/
TRIAL COURT ABUSE OF DISCRETION

Petitioner contends the prosecution offered, and he accepted, a plea bargain wherein the

prosecution would agree to 15-year sentences in each of petitioner's four (4) Potter County cases

and that all four (4) sentences would run concurrently. Petitioner contends the prosecution

breached this plea bargain agreement when it allowed the state trial court judge to enter

Judgments in Cause Nos. 52,536 and 52,537 ordering the sentences assessed in those cases to run

consecutive to the sentence assessed in Cause No. 52,538. Petitioner concludes this breach of the

plea agreement resulted in a violation of his constitutional right to due process as well as

prosecutorial misconduct.[10]

"Plea bargain agreements are contractual in nature, and are to be construed accordingly."

*United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994). An unkept plea bargain is a basis for

the grant of federal habeas relief if the petitioner can prove the existence of an allegedly broken

plea. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1251 (5th Cir.), *cert. denied*, 476 U.S. 1143, 106

S.Ct. 2253, 90 L.Ed.2d 699 (1986). To prove the existence of a plea bargain, the petitioner must

prove: "1) exactly what the terms of the alleged promises were; 2) exactly when, where, and by

whom such a promise was made; and 3) the precise identity of an eyewitness to the promise." *Id.*

The record before the state habeas court, which same evidence is now before this Court,

shows the following:

1.  The prosecutor's April 24, 2006 plea bargain offer (made while a 2<u>nd</u> degree
    charge was still pending against petitioner in Cause No. 52,539):

    a.  offered a 20-year sentence in each case in exchange for petitioner's
        guilty plea and judicial confession;

    b.  did not prohibit the sentences from running concurrent with any
        Randall County sentences;

---

[10]Petitioner does not specifically contend the State induced him to plead guilty by false promises or misrepresentations, or that his plea was involuntary from the outset. If petitioner was attempting to include the argument that his guilty plea was rendered involuntary because of a subsequent breach, the undersigned notes a breach of a plea agreement does not automatically cause the guilty plea, when entered, to have been unknowing or involuntary. Rather, it is precisely because the plea was knowing and voluntary (and hence valid) that obligates the government to uphold its side of the bargain and makes a breach even possible. *Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423 (2009).

     c.     was contingent on no further criminal history being found;

     d.     did not explicitly state whether petitioner's Potter County sentences would run concurrently or consecutively, but did state that if petitioner did not plead, the prosecutor would request trial settings, try the cases in separate trials, and seek consecutive sentences;

     e.     had to be accepted and guilty pleas entered on or before May 8, 2006 or the offer was withdrawn.

2.     The record does not reflect whether petitioner accepted or denied this offer by May 8, 2006, but guilty pleas were not entered until June 21, 2006.

3.     The record does not contain any other written plea offers from the State, nor does the record contain an affidavit from either the prosecutor or defense counsel stating the terms of any other verbal or written plea offers.

4.     Written plea admonishments signed by petitioner on June 21, 2006 did not expressly state the manner in which any of petitioner's sentences would run, *i.e.*, concurrently or consecutively.

5.     The State did not at any time file a motion to cumulate sentences in any of the four (4) cases.

6.     The State's written "Punishment Recommendations" in each case failed to indicate the recommendations were "mutually agreed and recommended to the court," nor did they indicate "the state and the defense have no agreed recommendation for the court."

7.     In the written "Punishment Recommendations," the prosecutor recommended 15-year sentences and a fine of $100 be assessed in each case but did not indicate if the sentences should be concurrent or consecutive.

8.     In Cause No. 52,538 only, the prosecutor recommended an "affirmative finding of drug free zone" be made.

9.     No evidence was presented in the underlying state habeas action reflecting any discussion of the specifics of a plea bargain between the State and petitioner at the guilty plea or sentencing hearings.

10.     The trial court's "Docket Sheet" in each case reflects only that punishment was assessed at "15 years TDC" and does not indicate whether the sentences were to be concurrent or consecutive.

There is a lack of documentation in the record regarding any final plea agreement (only the initial plea offer of twenty (20) years is included, which was not the eventual recommendation). Stated differently, petitioner did not accept nor did he plead guilty pursuant to the initial written plea offer. As a result, the record leaves much room for speculation as to what, in fact, did occur during both plea negotiations and in the underlying state trial court proceedings. This is not to say petitioner was not led to believe, or could not have reasonably believed, his sentences would run concurrently, particularly when considering the prosecution's position in that first plea offer (of 20 years) that if petitioner did not plead, consecutive sentences would be sought. The issue under this ground, however, is not what petitioner may have reasonably believed or even if the plea was knowingly entered. Instead, the issue is whether there was a binding plea agreement, which was breached and which can be specifically enforced.

The record simply does not reflect with sufficient clarity, any specific promise or plea agreement between the prosecutor and petitioner that petitioner's sentences would run concurrent. While not only is it entirely possible, it is probable, that the normal practice in state court is for sentences to run concurrent rather than consecutive if the plea agreement is silent on that issue, no evidence was presented in the state court proceeding establishing that fact. Consequently, petitioner has not and cannot meet his burden to conclusively show a plea bargain existed between the State and petitioner the terms of which were that the prosecutor agreed to 15-year concurrent sentences in all of petitioner's cases in exchange for petitioner's guilty pleas in those cases. Since the exact terms and conditions of any alleged plea bargain agreement have not been established, petitioner's contention that the prosecution breached the plea bargain agreement when it allowed the trial court to enter Judgments ordering two of the sentences to run

consecutive to one of the other sentences has not been proven. If it had been proven, petitioner could enforce it.

Petitioner also contends the State's alleged breach of the plea bargain amounted to prosecutorial misconduct and a violation of due process, and that the state trial court abused its discretion because it did not follow the plea agreement between petitioner and the State.

Again, petitioner has not demonstrated the existence of a specific plea bargain between himself and the State by showing the exact terms of the alleged promises (specifically, that there was an agreement to run petitioner's sentences concurrently), when, where, and by whom such promises were made, or the identity of an eyewitness to the promises. Nor has petitioner shown that such a plea bargain was tendered to the trial court for its approval, or that the plea bargain was accepted by the trial court. Petitioner has not shown any breach of a plea bargain or prosecutorial misconduct in failing to follow a plea bargain. Moreover, the Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. *See United States v. Molina-Iguado,* 894 F.2d 1452, 1456 (5th Cir. 1990). In the absence of evidence demonstrating an actual breach of an existing plea bargain, petitioner has not demonstrated he was deprived of his liberty in any fundamentally unfair way rising to the level of a denial of due process. Similarly, without a plea bargain agreement having been proven, petitioner cannot demonstrate the trial court abused its discretion in failing to follow a plea agreement. Petitioner has failed to substantiate his claims of a breached plea agreement, of prosecutorial misconduct in failing to follow such an agreement,[11] that he was

---

[11] If the prosecutor intentionally misled petitioner or misrepresented that all of the sentences would run concurrently while knowing they would be run consecutively, then such actions might constitute prosecutorial misconduct. There has not been any showing that the prosecution intentionally or purposefully misled petitioner.

denied due process as a result, or that the trial court abused its discretion in failing to follow a

purported agreement.  Petitioner's claims under Grounds 1. and 2.a. should be denied.

## VII.
## TRIAL COURT ABUSE OF DISCRETION
## IN IMPOSING CONSECUTIVE SENTENCES

Under Ground 2.b., petitioner contends the state trial court abused its discretion in

ordering the sentences in Cause Nos. 52,536 and 52,537 to run consecutive to his 15-year

sentence in Cause No. 52,538 because the cumulation of the sentences was not permitted by state

case law or statute.   Whether sentences are properly ordered to run concurrent or consecutive is

normally a matter of state law and procedure, and a simple claim of state law error is not

cognizable on federal habeas review.  *See Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir.

2007), *cert. denied*, 128 S.Ct. 1874 (2008).  A federal habeas court may grant habeas relief when

the petitioner is held "in custody pursuant to the judgment of a State court only on the ground

that he is in custody *in violation of the Constitution* or laws or treaties of the United States."  28

U.S.C. § 2254(a) (emphasis added).  A federal habeas court asks only whether a *federal*

constitutional violation infected the trial.  *See also Herrera v. Collins*, 506 U.S. 390, 113 S.Ct.

853, 859, 122 L.Ed.2d 203 (1993).  Therefore, if a violation of state law or procedure is alleged

and demonstrated, the proper inquiry on federal habeas review "is to determine whether there has

been a constitutional infraction of defendant's due process rights which would render the trial as

a whole 'fundamentally unfair.'"  *Nelson v. Estelle*, 642 F.2d 903, 906 (5th Cir. 1981) (citing

*Donnelly v. De Christoforo*, 416 U.S. 637, 645, (1974)); *see Tifford v. Wainwright*, 588 F.2d 954,

957 (5th Cir.1979) (denial of motion to sever one codefendant's trial from that of other

codefendants, under facts of the case, made trial "fundamentally unfair").  Consequently, while a

state law error in and of itself alone is not cognizable, it may constitute an independent basis for federal habeas relief if the error was so egregious or prejudicial as to amount to a federal constitutional violation, such as a denial of due process, resulting in proceedings that were "fundamentally unfair." *Cf. Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005); *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005) (addressing the requirement that an erroneous state court evidentiary ruling violate a specific federal constitutional right or be so egregious that the ruling renders the petitioner's trial fundamentally unfair). The Court will consider whether a state law error occurred and, if it did, whether such error rendered petitioner's entire prosecution and sentence fundamentally unfair.

The undersigned initially notes the State's November 10, 2011 answer to petitioner's habeas application was based upon an inaccurate statement of state law. The State argued <u>exclusively</u> that petitioner's sentences in Cause Nos. 52,536 and 52,537 were "mandatorily cumulated with his drug free zone sentence in Cause [No.] 52,538-A pursuant to section 491.134(h) [of the Texas Health and Safety Code] which makes [it] mandatory that punishment for a crime committed under that section may not run concurrently with 'a conviction under any other criminal statute.'"

In *Williams v. State*, 253 S.W.3d 673 (Tex.Crim.App. 2008), the Texas Court of Criminal Appeals construed the plain language of section 481.134 of the Texas Health and Safety Code to mean that the mandatory cumulation of sentences provision of subsection (h) does <u>not</u> apply when a defendant's other conviction is also for a criminal offense listed within section 481.134. Simply stated, *Williams* held that consecutive sentences are <u>not</u> mandated when a defendant's other conviction is also for a criminal offense listed within section 481.134. Although *Williams*

construed section 481.134(h) as not requiring the <u>mandatory</u> cumulation of sentences, *Williams*

did not preclude the <u>discretionary</u> cumulation of such sentences.  The opinion in *Williams* was

issued May 14, 2008, several years <u>prior</u> to the filing of the State's answer in the state habeas

proceeding but almost two (2) years <u>after</u> petitioner was sentenced on June 21, 2006.  *Williams*,

however, was not a reinterpretation of the statute.  Instead, it merely confirmed the plain

language of the statute as it existed at the time of petitioner's sentencing and did not make any

changes to its meaning.  Therefore, contrary to the State's answer in the state habeas proceeding,

Texas law did <u>not</u> mandate the stacking of petitioner's sentences either at the time petitioner was

convicted and sentenced or afterwards.  The Texas Court of Criminal Appeals denied petitioner's

state habeas application without a written order.  As there was no written explanation for the

denial, it is unclear whether the Court of Criminal Appeals based its denial of petitioner's habeas

application on the State's answer and its incorrect statement of the law.  If the Court of Criminal

Appeals based its denial on the state's erroneous argument, then the state court decision denying

relief would arguably be erroneous.

### A.
### Did the State Trial Court Mistakenly Order Consecutive
### Sentences Based on Texas Health and Safety Code § 481.134?

At the time of petitioner's sentencing on June 21, 2006, section 481.134 of the Texas

Health and Safety Code defined drug-free zones and provided for enhanced penalties for offenses

committed within such zones.  Subsection (h) of that section provided:

> Punishment that is increased for a conviction for an offense listed under this section
> may <u>not</u> run concurrently with punishment for a conviction under any *other* criminal
> statute.

(emphasis added).  Under a plain reading of the statute, it was impermissible to run punishment

for "an offense listed" in section 481.134 [multiple criminal offenses listed under subsections (b), (c), (d), (e) and (f)] concurrently with punishment for any offense defined by "any other criminal statute." "Other criminal statute" plainly meant any criminal statute not listed within the subsections of 481.134.[12]

Petitioner was indicted for and convicted of four (4) offenses under Chapter 481 of the Texas Health and Safety Code, *to wit*: possession offenses of a controlled substance in Penalty Group 1 under section 481.115. Since all of petitioner's charges and convictions were for offenses listed under section 481.134, petitioner did <u>not</u> have a conviction under any *other* criminal statute and, as a result, was not subject to mandatory stacking of his sentences. By its plain language, section 481.134(h) did <u>not</u> apply to petitioner's cases and did <u>not require</u> consecutive sentences.

However, even if consecutive sentences were not mandated, it is possible petitioner's sentences in Cause Nos. 52,536 and 52,537 could have been ordered to run consecutive to his sentence in Cause No. 52,538 on some other basis. This is the argument respondent makes. In Cause No. 52,538, the trial court made an affirmative finding that the offense occurred in a DFZ and noted:

> Said defendant is guilty of the offense of Possession of a Controlled Substance in a Drug Free Zone, Enhanced as charged in this cause, the Court having found that the offense occurred in a Drug Free Zone pursuant to Sec. 481.134 of the Texas Health and Safety Code, and as confessed by the defendant in the plea of guilty herein made, and the court having also found that the defendant had once before [been] convicted of a felony offense.

---

[12]The *Williams* holding on May 14, 2008 confirmed the plain language of the statute and did not make any changes to its meaning, and specifically noted that where a defendant is "not convicted of a criminal offense not listed within § 481.134, the consecutive sentencing provision of § 481.134(h) does not apply." This holding did not overturn any previous precedent holding otherwise.

In Cause Nos. 52,536 and 52,537, the trial court's Judgments stated only:

> And the said defendant on the 21[st] day of June, 2006 having been legally convicted of and sentenced for the offense of Possession of a Controlled Substance in a Drug Free Zone, Enhanced, Third Degree felony enhanced pursuant to Sec. 12.42[a][3], Penal Code, in Cause No. 52,538-A in the 47[th] Judicial District Court of Potter County, Texas and his punishment having been assessed and adjudicated at imprisonment in the Texas Department of Criminal Justice, Institutional Division for fifteen (15) years, it is further ORDERED AND ADJUDGED that the punishment herein adjudged against the defendant shall begin when the judgement and sentence in said Cause NO. 52,538-A shall have ceased to operate.

The written judgment does not affirmatively indicate the trial judge stacked the non-DFZ possession sentences on top of one of the DFZ possession sentences because he believed concurrent sentences were prohibited by section 481.134(h), or whether those sentences were stacked on some other basis. Based on the record, which includes the State's answer to the state habeas petition, it cannot be conclusively determined that the cumulation order in this case was entered based upon the state trial court's mistaken belief that consecutive sentences were mandated by section 481.134(h) rather than the trial court stacking the sentences in his discretion. Stated differently, it cannot be said that the state trial court misapplied Texas law in cumulating the sentences without addressing whether the state trial court could, in its discretion, legally impose consecutive sentences. That issue is discussed below.

### B.
### Were Concurrent Sentences Required?

Generally, when a defendant has been convicted in two or more cases, the trial court has the discretion, in the second and subsequent cases, to order that the sentences imposed run consecutively or concurrently. Tex.Code Crim. Proc. Ann. art. 42.08 (Vernon Supp. 2006). Section 3.03 of the Texas Penal Code, however, limits this discretion and mandates that "except

as provided by Subsection (b)," sentences shall run concurrently when a defendant is found guilty of more than one offense arising out of the "same criminal episode" that is prosecuted in a "single criminal action." Section 481.132 of the Texas Health and Safety Code contains a similar limitation on a court's discretion:

**Multiple Prosecutions**

(a) In this section, "criminal episode" means the commission of two or more offenses under this chapter under the following circumstances:

  (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme, plan, or continuing course of conduct; or

  (2) the offenses are the repeated commission of the same or similar offenses.

(b) A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. If a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, not later than the 30th day before the date of the trial, the state shall file written notice of the action.

. . .

(d) If the accused is found guilty of more than one offense arising out of the same criminal episode **prosecuted in a single criminal action**, sentence for each offense for which the accused has been found guilty shall be pronounced, **and those sentences run concurrently**.

. . .

(f) This section provides the exclusive method for consolidation and joinder of prosecutions for offenses under this chapter. . . .

Texas Health and Safety Code § 481.132 (Vernon 2006) (emphasis added). A single criminal action of multiple prosecutions allows for the efficient disposition of cases, but also provides a benefit for the accused since, even when he is found guilty of more than one offense, any

sentences imposed must run concurrently.  *Watson v. State*, 900 S.W.2d 60, 63 (Tex.Crim.App. 1995)(en banc).

A defendant is prosecuted in a "single criminal action" when allegations and evidence of more than one offense arising out of the same criminal episode are presented in a single trial or plea proceeding.  *LaPorte v. State*, 840 S.W.2d 412, 414 (Tex.Crim.App. 1992) (en banc).  The State's failure to file written notice joining offenses in one proceeding does not preclude a finding that multiple offenses were prosecuted in a "single criminal action."  *Id.*  If a defendant is prosecuted in a "single criminal action" for multiple offenses arising out of the same criminal episode, then his sentences <u>must</u> run concurrently, regardless of whether the State gave proper notice of joinder.  *Id.* at 414-15; *Robbins v. State*, 914 S.W.2d 582, 584 (Tex.Crim.App. 1996).  This applies to prosecutions brought under the Health and Safety Code.  *See Rollins v. State*, 994 S.W.2d 429, 431 (Tex. App. – Beaumont 1999, no pet.) (applying *LaPorte* to offenses arising under the Health and Safety Code).  Thus, the State and the trial court are statutorily bound to concurrent sentencing for a defendant when the State consolidates all of its causes for one guilty plea proceeding.  *See Robbins*, 914 at 584; *LaPorte*, 840 S.W.2d at 414; *Rollins*, 994 S.W.2d at 431.

Here, the State did not file a notice of joinder and there is no evidence that any plea bargain that may have existed included the stipulation that the State would consolidate these actions so as to allow petitioner to benefit from the one criminal episode/single criminal action/concurrent sentencing provision.  Without a joinder or evidence of the terms of a plea bargain calling for joinder, the State could have required petitioner to plead guilty in separate proceedings.

In her answer, respondent argues the Court should find petitioner's guilty pleas were, in fact, taken by the state trial court in separate "criminal actions." If there were separate actions, the trial judge retained discretion to stack petitioner's sentences. Respondent contends petitioner had the burden to show, on post conviction collateral attack, that the State prosecuted his cases in a "single criminal action," and that petitioner has failed to meet that burden. Respondent concludes that under state law, petitioner's sentences *could have been* properly stacked because petitioner has not demonstrated his guilty pleas were taken in a "single criminal action." Since there is no transcription of the guilty plea hearing or sentencing hearing, and since neither party has supplemented the record with an affidavit from the prosecutor or defense counsel or other fact witness describing the manner in which the guilty plea and sentencing hearings were conducted, there is no direct evidence that there were or were not separate criminal actions.

If it is, in fact, petitioner's burden to somehow "prove" by a preponderance of the evidence that the offenses were not jointly prosecuted in a "single criminal action," it would be extremely difficult for him to do since there is no record of the trial court proceedings, and based upon his inability to compel defense counsel to provide an affidavit addressing the issue, as well as his lack of knowledge of the identity of any other possible fact witnesses. Even so, review of the limited state court record reveals there was only one appearance before the trial court in this case to hear and accept petitioner's guilty pleas and to impose sentences for petitioner's multiple offenses. The Docket Sheet in Cause No. 52,536 reflects a handwritten notation of, "Also: 52,537, 52,538 , 53,105" which would indicate the proceeding combined all of the cases for petitioner's pleas and for sentencing. The "Orders of Court" portion of each Docket Sheet in each of the four (4) cases is identical but for the above hand-written notation. This Court is also

familiar with the usual workings of a typical state trial court in this jurisdiction and is of the opinion that a state trial court conducting and concluding a separate proceeding for one cause number before beginning a second, third or fourth separate proceeding in other cause numbers where a defendant is entering guilty pleas to similar multiple offenses with a recommendation that the same length sentence be assessed in each case, would be improbable. In addition, the first plea offer stated that if the cases were tried, they would be prosecuted in separate trials and the State would seek consecutive sentences for each case, insinuating that if guilty pleas were entered, the cases would be prosecuted in a single "trial" with concurrent sentences. Respondent's contention that the guilty pleas in petitioner's four (4) criminal cause numbers were taken in separate "criminal actions," although possible, is not likely.

The Court acknowledges the Judgments in Cause Nos. 52,536 and 52,537 state petitioner was *convicted and sentenced* in Cause No. 52,538 *prior to* being convicted and sentenced in Cause Nos. 52,536 and 52,537. Even with that language in the Judgments (made after the fact, *i.e.*, the day after sentencing), the undersigned finds it unlikely that a separate guilty plea and sentencing proceeding was conducted in a later cause number, out of order and prior to previously filed cause numbers. While the Court cannot unequivocally eliminate the possibility, however remote, that the guilty pleas were entered in separate "criminal actions," the Court can find, based on the circumstantial evidence, that more likely than not, the cases were presented to and considered by the trial court in such an "intertwined manner" that the prosecution would be found, under Texas law and precedent, to have been a single criminal action.[13] *Cf. Walker v.*

---

[13]The Texas Court of Criminal Appeals did not remand the case, on state habeas review, to the trial court to develop the record and make findings as to whether the defendant was sentenced in a single criminal action. *Cf. Ex parte Bailey*, 2011 WL 2420355 (Tex.Crim.App. June 15, 2011) (on remand, after holding an evidentiary hearing, the trial court determined the defendant was sentenced in a single criminal action; however, the Texas Court of Criminal Appeals (TCCA) found the record

*State*, 2011 WL 5–5669 (Tex.App.– Corpus Christi Oct. 20, 2011); *Green v. State*, 242 S.W.3d

215, 220 (Tex.App. – Beaumont 2007, no pet.); *Polanco v. State*, 914 S.W.2d 269, 272

(Tex.App.– Beaumont 1996, pet. ref'd). As a result, the Court finds, by a preponderance of the

evidence, that the State jointly prosecuted all of petitioner's cases arising out of the same

criminal episode in a "single criminal action."

Having found petitioner's multiple offenses arising out of the same criminal episode were

prosecuted in a single criminal action, the undersigned finds the State and the trial court would

have been bound by section 481.132(d) of the Texas Health and Safety Code and were <u>required</u>

to run petitioner's sentences concurrently. *See Robbins*, 914 at 584; *LaPorte*, 840 S.W.2d at 414;

*Rollins*, 994 S.W.2d at 431. Petitioner's claim that the trial court erred and/or abused its

discretion in imposing consecutive sentences because such a cumulation order violated Texas

law, specifically section 481.132 of the Texas Health and Safety Code, has merit.

Petitioner's right to concurrent sentences under the Texas law cited above, however,

existed only under state law. Therefore, the issue on federal habeas corpus is whether the state

trial judge's violation of state law in assessing consecutive sentences was such an abuse of

discretion that it was of constitutional magnitude. This Court's analysis must focus on due

process considerations, and due process requires that the Court grant habeas relief only when

errors by the state court make the underlying proceeding fundamentally unfair. *Neyland v.

Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).

At the time of petitioner's conviction and until only recently, Texas case law held that a

---

was not sufficient to resolve the claim and again remanded for further findings of fact as to what evidence supported the trial
court's finding that the defendant was sentenced in a single criminal action. The TCCA was not able to determine on the record
before it whether defendant's cases were prosecuted in a single criminal action and ordered the trial court to obtain responses
from trial counsel as to whether the cases were prosecuted in a single criminal action).

sentence subject to an improper cumulation order was itself "void" and the error could be raised

at any time. *See LaPorte*, 840 S.W.2d at 414; *cf. Ex parte Carter*, 2017 WL 2458187

(Tex.Crim.App. June 7, 2017) (an improper sentence-cumulation order may be remedied, and

thus sentences cannot properly be declared void).  The imposition of a void sentence could be, in

and of itself, a violation of due process.  The undersigned finds the state trial court's error in

cumulating petitioner's sentences in this case would have constituted a denial of fundamental

fairness entitling petitioner to federal habeas relief.  This finding, however, is only made in the

alternative because the undersigned's recommendation that petitioner's application be granted

and federal habeas corpus relief be afforded is based upon a different constitutional violation

which is not dependent upon there being one criminal proceeding.

VIII.

**CONSTITUTIONAL VIOLATION WARRANTING FEDERAL HABEAS RELIEF:**
**ORAL PRONOUNCEMENT V. WRITTEN JUDGMENT**

Petitioner has complained throughout that the trial court did not orally pronounce, at the

sentencing hearing, that certain of petitioner's sentences were to run consecutively.[14]  As

previously noted, there is no transcription of the sentencing hearing and the State did not present,

in the state habeas proceedings, an affidavit from the prosecutor or any other fact witness

detailing whether the oral pronouncement of petitioner's sentences on June 21, 2006 included a

cumulation order for certain sentences to run consecutively, whether all of the sentences were

ordered to run concurrently, or whether the manner in which petitioner's sentences were to run

was mentioned by the trial court at all.  Therefore, the best evidence of what actually occurred

---

[14]At the evidentiary hearing, petitioner testified it was his recollection that the trial judge explicitly stated on the record that petitioner's sentences were to run concurrently.  The Court has not considered that testimony in reaching its decision.

during the sentencing hearing are the Docket Sheet/ Orders of Court entries made contemporaneously with the oral pronouncement of sentence. *In re Polk*, WR-76,790-02 at 94 (No. 52,536); WR-76,790-04 at 94 (No. 52,537); WR-76,790-03 at 90 (No. 52,538). Those entries do <u>not</u> reflect that the trial court orally pronounced any of the sentences were to run consecutively. Despite this absence of any writing or entry in the docket sheet that the sentences pronounced were cumulated, the written Judgment signed the next day imposed consecutive sentences in Cause Nos. 52,536 and 52,537.

Under Texas law, a trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex.Crim.App. 2002). When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex.Crim.App. 1998). Similarly, federal case law holds that when a written sentence is in conflict with the oral pronouncement, the oral pronouncement prevails. *See United States v. De La Pena-Juarez*, 214 F.3d 594, 601 (5th Cir. 2000); *United States v. Shaw*, 920 F.2d 1225, 1231 (5th Cir. 1991). If , instead of a conflict, there is merely an ambiguity between the two sentences, the entire record must be examined to determine the sentencing court's true intent. *Scott v. United States*, 434 F.2d 11, 20 (5th Cir. 1970). A trial court's failure to mention certain sentences would run consecutively in its oral pronouncement constitutes a conflict, not an ambiguity. *Cf. United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001) (the inclusion of mandatory drug treatment as a special condition in a court's written judgment, which was not included in its oral pronouncement, constituted a conflict, not an ambiguity). With such a conflict between a written judgment and an oral pronouncement of

sentence, the oral pronouncement controls. The rationale for this rule is that the imposition of sentence is a critical stage when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence. Once he leaves the courtroom, the defendant begins serving the sentence imposed. *Madding*, 70 S.W.3d at 135. Thus, "it is the pronouncement of sentence that is the appealable event, and the written sentence or order simply memorializes [what was orally pronounced] and should comport therewith." *Coffey*, 979 S.W.2d at 328. This Court finds, based on the Docket Sheets/Orders of Court entries, which constitute the best evidence available as to what the state trial court judge did during the sentencing hearing, that the oral pronouncement of sentence did <u>not</u> include a cumulation order. Therefore, the consecutive sentences imposed in the June 22, 2006 written Judgments were in conflict with the oral pronouncement of sentences on June 21, 2006.

A defendant has a federal constitutional right to be present at sentencing.[15] *United States v. Bigelow*, 462 F.3d 378, 380 (5th Cir. 2006). "Th[is] constitutional right . . . is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but . . . is [also] protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *Id.* The conflict that exists here between the written sentences petitioner eventually received on June 22, 2006 and the sentences which were orally pronounced in his presence on June 21, 2006 results in petitioner being denied his right to be present when his final sentences were imposed. Petitioner was not physically present when the written sentences were delivered in the Judgment signed the day <u>after</u> his sentencing hearing. Petitioner

---

[15]Section 42.03, section 1(a), of the Texas Code of Criminal Procedure also requires the trial court to pronounce sentence in the defendant's presence in a felony case, and a felony defendant may not waive this right to be present at sentencing. *See Casias v. State*, 503 S.W.2d 262, 264 (Tex.Crim.App. 1973).

was not able to hear and respond to the trial court's imposition of consecutive sentences in Cause Nos. 52,536 and 52,537.[16]  The Court finds petitioner's Sixth Amendment federal constitutional right to be present at sentencing was violated because the cumulation of sentences language included in the written Judgment conflicts with the trial court's oral pronouncements of sentence at the sentencing hearing.  Relief for this constitutional violation lies whether the guilty pleas and sentencings were conducted in one proceeding or separate proceedings.  The Sixth Amendment violation is present under either scenario.  Allowing petitioner's consecutive sentences to stand results in an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  In particular, petitioner was denied due process because his consecutive sentences imposed were in violation of his constitutional right to be present and the imposition of petitioner's consecutive sentences after the fact resulted in a fundamentally unfair trial.

IX.
EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises numerous claims of ineffective assistance of trial counsel.  As set out above, the Court has determined the written Judgments imposing consecutive sentences were different from the sentences orally pronounced in petitioner's presence, thereby violating petitioner's constitutional rights and warranting federal habeas corpus relief.  It is not necessary, therefore, to address petitioner's claims of ineffective assistance of counsel.

---

[16]The Court again notes that all of petitioner's sentences were calculated as concurrent sentences until he was about to become eligible for parole and his attorney inquired as to his sentences.

X.

## PETITIONER HAS MET THE AEDPA REVIEW STANDARD

Petitioner has demonstrated his claim that the oral pronouncement of his sentences differed from the subsequent written judgments has independent constitutional merit. He must still overcome the more arduous re-litigation bar of the AEDPA. *See* 28 U.S.C. 2254(d). The state court considered petitioner's claim and denied relief without written order. It is the undersigned's opinion that petitioner has shown the state court's decision regarding his claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Consequently, petitioner is entitled to, and this Court should award, federal habeas corpus relief.

XI.

## RECOMMENDATION

The inconsistencies in this case, the absence of a written plea agreement or a complete record, as well as the overall posture of this case is troublesome. On the one hand, it appears petitioner has served a portion of an additional 15-year sentence that was not contemplated in the plea negotiations, the sentence appears to have been violative of state law, and some of these errors could have been the result of ineffective assistance of counsel. On the other hand, as a result of his guilty plea, petitioner avoided the possibility of stacked sentences of up to 99 years and 20 years each.

Petitioner is entitled to only serve the sentence he was assessed and not a more harsh sentence, even if the more harsh sentence is still less than the maximum.[17] The undersigned finds

---

[17]Even though petitioner has been released to parole, this matter is not moot, but is still a continuing case or controversy. Petitioner has not discharged his consecutive sentences and continues to serve them on parole.

petitioner was denied due process because his consecutive sentences were imposed in violation of his Sixth Amendment federal constitutional right to be present at sentencing because the cumulation of sentences language included in the written Judgments conflicts with the trial court's oral pronouncements of sentence at the sentencing hearing.  The undersigned also finds petitioner has met the AEDPA standard for granting federal habeas relief after a state court has made a decision denying habeas relief.  Consequently, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner SHEON ANTHONY POLK be GRANTED for the reasons set out in this Report and Recommendation, particularly in Paragraph VIII.

It is the further opinion of the undersigned that petitioner has demonstrated the state trial court's error in cumulating petitioner's sentences in this case constituted a violation of state law amounting to a denial of due process and a denial of fundamental fairness entitling petitioner to federal habeas corpus relief, and that petitioner has met the AEDPA standard for granting federal habeas relief after a state court has made a decision denying habeas relief.  Consequently, it is the undersigned's ALTERNATIVE RECOMMENDATION that petitioner's federal habeas corpus application be granted for the reasons set out in this Report and Recommendation, particularly in Paragraph VII.B.

It is the FURTHER RECOMMENDATION of the Magistrate Judge, however, that if respondent takes action, within sixty (60) days of the date of an Order adopting this recommendation, to reform the Judgments in Cause Nos. 52,536 and 52,537 by deleting the cumulation orders, then the writ need not be granted.

XII.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____/9th_____ day of September 2017.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\*NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A part's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).